BUCHALTER NEMER
A Professional Corporation
  NEIL J. RUBENSTEIN (SBN: 77975)
  CRAIG C. CHIANG (SBN 209602)
55 Second Street, Suite 1700
San Francisco, CA 94105-3493
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email: cchiang@buchalter.com

Attorneys for Secured Creditor
Bank of Marin, a California banking corporation

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| AUTO CARE MALL OF FREMONT, INC., a California corporation,<br><br>　　　　　　Debtor. | Case No. 12-56050 SLJ<br><br>Chapter 11<br><br>**SECURED CREDITOR BANK OF MARIN'S MOTION FOR ORDER (1) EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1), (2) GRANTING RECEIVER AUTHORITY TO OBTAIN CREDIT, USE CASH COLLATERAL, AND INCUR DEBT, AND (3) GRANTING RELIEF FROM THE AUTOMATIC STAY [§362]**<br><br>[HEARING DATE PENDING APPLICATION FOR ORDER SHORTENING TIME]<br><br>Date: August __, 2012<br>Time: __:__ __.m.<br>Place 280 South First Street, Courtroom 3099<br>　　　San Jose, California<br>Courtroom of the Hon. Stephen L. Johnson |

Secured creditor Bank of Marin hereby moves the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") for entry of an order (1) relieving Susan L. Uecker (the "Receiver") from the turnover requirement of 11 U.S.C. §543, (2) granting

Receiver authority to obtain credit and incur debt, and (3) terminating the automatic stay to permit the Receiver to exercise all of her powers set forth in the Superior Court's Order Appointing Receiver *Ex Parte* to real property commonly known as 40851-40967 Albrae Street, Fremont, California 94538, and its Order Confirming Appointment of Receiver, et al. This motion is supported by the Declaration of Merry B. Kindred (the "Kindred Decl."), the Declaration of Susan L. Uecker (the "Receiver Decl."), and the Request for Judicial Notice, all filed concurrently herewith.

I.

**INTRODUCTION**

This case mandates the retention of the Receiver. On May 18, 2012, the Alameda County Superior Court of the State of California ("Superior Court") entered its Order Appointing Receiver *Ex Parte* (the "Appointment Order"), appointing the Receiver to address the Debtor's mismanagement and misappropriation of Bank of Marin's cash collateral. The Superior Court confirmed its appointment of the Receiver through entry of its Order Confirming Appointment of Receiver, et al. (collectively, with the Appointment Order, the "Orders"). The bankruptcy filing by Auto Care Mall of Fremont, Inc. (the "Debtor") must not stymie the Superior Court's desire to have an independent receiver take possession, custody and control of real property commonly known as 40851-40967 Albrae Street, Fremont, CA 94538 (the "Property")[1].

As set forth in the *Ex Parte* Application for Order Shortening Time ("OST Application"), filed concurrently with this Motion, the Debtor is attempting to thwart the efforts of the Superior Court to address the Debtor's improprieties, including the Debtor's failure to pay all real property taxes from the 2009-2010 2nd Installment through the 2011-2012 2nd Installment, which total $200,430.39, not including an additional penalty/interest of $19,330.73. As the Debtor continued to ignore its property tax obligations for over two years, it collected, from the Property's tenants, monthly CAM charges that were supposed to be used partly to pay real property taxes. Instead of

---

[1] The Property is improved with four single story warehouse buildings totaling 38,226 square feet and is occupied exclusively with auto service related businesses. The Property consists of fifteen units, three of which are currently vacant. The Property generates monthly rents totaling approximately $34,492.08 in addition to CAM charges totaling $8,235.50.

BN 12088000v2
2

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT

Case: 12-56050    Doc# 11    Filed: 08/22/12    Entered: 08/22/12 14:03:37    Page 2 of 10

properly using CAM charges, or satisfying its obligations to Bank of Marin, in 2011 and 2012, the Debtor distributed over $256,300 and $197,400, respectively, in "owner" distributions.

The Debtor's haphazard use of funds did not end with the misuse of CAM charges. The Debtor also failed to account for $36,360.16 in tenant security deposits, which should have been turned over to the Receiver over three months ago. Instead, the Debtor ignored the Receiver's request and the Superior Court's Orders directing the Debtor to turn over all security deposits to the Receiver. Alarmingly, the Debtor's bankruptcy schedules indicate that the security deposits do not exist. The Debtor's mismanagement and misconduct are in sharp contrast to the Receiver's diligent efforts, and highlights the benefit to all of the Debtor's creditors in excusing the Receiver from turning over the Property. The Property generates monthly rents totaling approximately $34,492.08 in addition to CAM charges totaling $8,235.50. The Receiver received only $292.79 from the Debtor's former property manager, and nothing from the Debtor, although the Debtor's former property manager indicated that $39,500.00 was turned over to the Debtor in May 2012, immediately prior to the Receiver's appointment. From her operations of the Property, the Receiver holds $92,750.13 as of August 21, 2012.

Returning the Property to the Debtor's mismanagement threatens the progress that the Receiver has made since her appointment in May to stabilize the Property for the benefit of the Debtor's creditors. In the time period since her appointment, the Receiver has discovered a number of property related issues. Significantly, Cintas Fire Protection performed 5-year inspection certification services in February and March 2012, but was not paid for its services, at the same time as significant funds were being diverted by the Debtor. Payment of Cintas is necessary to obtain the required Certification of Fire Protection System. In addition, Cintas informed the Receiver of its intention to file a mechanic's lien against the Property for the unpaid invoice. The Receiver properly satisfied the obligation to Cintas.

In addition, since her appointment, the Receiver has discovered a number of tenant lease issues that required immediate attention. Three tenants were occupying premises under expired leases, with two leases having expired over three years ago. In addition, Pacific Stereo indicated that it has attempted to obtain a lease assignment for over a year. Finally, King Kovers, a former

tenant, chose to move to a nearby property, explaining that it attempted to enter a renewal but was not able to complete the documentation. There is no compelling reason to allow the Debtor to take possession of the Property to the detriment of its creditors. As set forth in the Receiver Decl., the Receiver believes that turning over control would result in disruption to the Property's existing tenants and cash flow, and that an additional change in management of the Property would create stability concerns with tenants and prospective tenants. True and correct copies of the Orders are attached under **Exhibit A** to the Receiver Decl.

In issuing the Orders against the Debtor, the Superior Court considered the abundance of malfeasance committed by the Debtor, including its failure to pay over two years of property taxes, and its failure to pay its contractual obligations to Bank of Marin for the monthly payment that came due on January 15, 2012 and all subsequent payments.

As set forth in further detail in the Receiver Declaration, the Receiver has made significant progress in her efforts to preserve the value of the Property. The Receiver has paid appropriate utility bills and Property expenses, diligently has prepared vacant units for lease, has retained existing tenants, has developed concrete plans to make necessary repairs, and has begun updating leases as necessary, all of which are significant improvements to the Property's operations. <u>Continuity of management is key to retaining existing tenants</u>. If the Property's value is to be preserved, the Receiver must be permitted to move quickly in a concerted effort, retaining the rights granted to her by the Superior Court over the Property.

The Debtor's bankruptcy estate will not be prejudiced, as the Receiver is in the best position to maintain the Property's value and address tenant needs. The Motion preserves the Receiver's right to continue maintaining the Property, which only benefits the bankruptcy estate by maximizing the value of the Property and minimizing any deficiency claim. The relief sought does not preclude anyone, including the Debtor, from presenting, and seeking to confirm, a Chapter 11 plan in this Single Asset Real Estate case, nor would it prevent the Receiver from continuing to update all parties, and updating the Bankruptcy Court, of her progress. Rather, at this juncture, secured creditor Bank of Marin asks that the Bankruptcy Court consider the Superior Court's decision three months ago to appoint the Receiver.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 12088000v2

4

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1);
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case: 12-56050    Doc# 12    Filed: 08/22/12    Entered: 08/22/12 14:03:37    Page 4 of 10

Bank of Marin seeks an order permitting the Receiver to continue managing the Property. This is in the best interest of the creditors. The Receiver has been in place and operating the property for over three months. In that time, she has become familiar with, and has become an integral part of, the operation of the Property. She has also attempted to reverse some of the damage caused by the Debtor. Turning over control yet again would result in significant disruption and yield no benefit to creditors.

## II.
## FACTUAL BACKGROUND

The Property is improved with four single story warehouse buildings totaling 38,226 square feet and is occupied exclusively with auto service related businesses. In finding ample grounds to appoint the Receiver to oversee the Property, the Superior Court considered the same facts that are now before the Bankruptcy Court.

### *The Loan*

On or about February 6, 2008, Bank of Marin and the Debtor entered into a Business Loan Agreement (the "Loan Agreement"), in writing, a true and complete copy of which is attached as **Exhibit 1** to the Kindred Decl. The Debtor made, executed and delivered to Bank of Marin a Promissory Note (the "First Note"), in writing, for value received, in the principal sum of $6,000,000.00, a true and complete copy of which is attached as **Exhibit 2** to the Kindred Decl.

To secure repayment of the First Note, the Debtor made, executed and delivered to Bank of Marin a written Deed of Trust dated February 6, 2008 (the "First Deed of Trust"). The First Deed of Trust encumbers the Property, which is legally described in the Exhibit A attached to the First Deed of Trust, together with all existing or subsequently erected or affixed buildings, improvements and fixtures as more particularly described therein. The First Deed of Trust was recorded on February 13, 2008, as Document Number 2008053817, in the Official Records of the County of Alameda, State of California. A true and complete copy of the First Deed of Trust is attached as **Exhibit 3** to the Kindred Decl. and by this reference made a part hereof.

The First Note provides for the Debtor to pay to Bank of Marin the principal sum of $6,000,000.00, together with interest on the unpaid principal balance from February 14, 2008,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 12088000v2                                5

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Case: 12-56050   Doc# 12   Filed: 08/22/12   Entered: 08/22/12 14:03:37   Page 5 of 10

until paid in full. The Debtor agreed to pay the Note in accordance with the payment schedule set forth in the First Note beginning March 15, 2008, until February 15, 2018, when the entire unpaid balance of principal and all accrued interest would be due and payable. The First Note provides for payment of late charges should any payment be late, and for an increase in the interest rate in the event of any default thereunder.

In addition to the obligations set forth in the First Note, the Debtor made, executed and delivered to Bank of Marin a second Promissory Note (the "Second Note"; with the First Note, the "Notes"), in writing, for value received, in the principal sum of $250,000.00, a true and complete copy of which is attached as **Exhibit 4** to the Kindred Decl. and by this reference made a part hereof. To secure repayment of the Second Note, the Debtor made, executed and delivered to Bank of Marin a written Deed of Trust dated March 19, 2008 (the "Second Deed of Trust"; with the First Deed of Trust, the "Deeds of Trust"). The Second Deed of Trust encumbers the Property and was recorded on March 21, 2008, as Document Number 2008098539, in the Official Records of the County of Alameda, State of California. A true and complete copy of the Second Deed of Trust is attached as **Exhibit 5** to the Kindred Decl. and by this reference made a part hereof.

The Loan Agreement, the Notes, the Deeds of Trust, and all related documents evidencing and/or securing the Notes are collectively referred to as the "Loan Documents".

### *Debtor's' Defaults*

The Debtor is currently delinquent in the payments due for the months of January 2012 and all subsequent payments under the First Note, and for the months of February 2012 and all subsequent payments under the Second Note. As a result of the Debtor's default, Bank of Marin declared pursuant to the subject Loan Documents that all sums secured by the Deeds of Trust are immediately due and payable.

The Loan Documents provide that an Event of Default (as defined therein) includes the failure to make any payment when due. The Debtor committed monetary and covenant defaults under the terms of the Loan Documents, including, but not limited to: (1) failing to make the regularly scheduled payment due on January 15, 2012, under the First Note, and on February 15,

BN 12088000v2

6

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Case: 12-56050    Doc# 12    Filed: 08/22/12    Entered: 08/22/12 14:03:37    Page 6 of 10

2012, under the Second Note, or any subsequent payment due thereafter; (2) failing to pay county-assessed property taxes from the 2009-2010 2nd Installment through the 2011-2012 2nd Installment, which total $200,430.39, not including an additional penalty/interest of $19,330.73; and (3) failing to turnover to Bank of Marin all rents received following a monetary default.

There is now due, owing and payable to Bank of Marin from the Debtor the principal sum of $5,716,704.46, accrued unpaid interest of $254,278.27, late charges of $15,077.65, under the First Note, and the principal sum of $244,135.59, accrued unpaid interest of $10,070.38, late charges of $409.55, under the Second Note, together with accruing interest at the default rate, prepayment penalties, insurance premiums, foreclosure costs, receiver fees, attorneys' fees and costs in amounts not yet determined under the Notes.

The Debtor's Schedule D understates the Debtor's obligation under the Notes, and identifies an additional judgment lien against the Property held by Bank of America to secure a $6,000,000.00 claim scheduled by the Debtor as a non-contingent, liquidated, and undisputed held by Bank of America. The Debtor's Schedule D identifies non-contingent, liquidated, and undisputed claims totaling $11,105,135.00 that encumber the Property, which the Debtor values at $7,400,000.00.

### *Appointment of Receiver*

On May 18, 2012, after considering Bank of Marin's *Ex Parte* Application for Order Appointing Receiver, etc., the Superior Court appointed the Receiver to take possession, custody and control of the Property. The Superior Court made the determination that the Receiver was needed to take immediate possession, custody, and control of the Property, with the full power to operate and maintain the Property. Thereafter, the Superior Court confirmed the Receiver's appointment. In granting these sweeping powers, the Superior Court recognized the exigency faced by Bank of Marin, and the need to place the Property under the control of the Receiver. In appointing the Receiver on an *ex parte* basis, the Superior Court considered these key facts: (1) the Debtor failed to pay the sums due and owing to Bank of Marin and real property taxes, but continued to collect the rents, issues and profits generated by the Property, and (2) in order to keep the Property operating, it was critical to have the Receiver in place to pay appropriate

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 12088000v2    7

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1);
MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT

Case: 12-56050    Doc# 11    Filed: 08/22/12    Entered: 08/22/12 14:03:37    Page 7 of 10

expenses, to handle repair problems, to retain existing tenants, and to attract new tenants to fill vacancies. Excusing turnover is critical, where the Receiver has proven far more capable than the Debtor in serving as a fiduciary.

Recognizing that Bank of Marin had the right to protect its interest in the Property, the Superior Court appointed the Receiver and issued a temporary restraining order enjoining the Debtor. The Receiver is best equipped to continue with her efforts already underway in protecting, maintaining and operating the Property. The Receiver Decl. sets forth in detail the Receiver's efforts since her appointment and the benefits that her efforts have produced. The exigency that compelled the *ex parte* appointment of the Receiver remains and supports excusing the Receiver from turnover, permitting the Receiver to obtain credit, and lifting the automatic stay.

By taking the rents, the Debtor made it difficult to service the debt and to take care of pressing maintenance issues at the Property, such as obtaining Certification of Fire Protection System. The Debtor's pre-petition actions evidenced a gross disregard of its obligation to protect tenant security deposits, to use CAM charges to pay real property taxes, as agreed upon with tenants, and to pay real property taxes, all of which speak to the need to keep the court-appointed Receiver in place.

## III.

## RELIEF SOUGHT

Bank of Marin is entitled to relief pursuant to Bankruptcy Code section 543(d)(1) because maintenance of the Receiver in place is manifestly in the best interest of all creditors. For that reason, Bank of Marin requests that the Court excuse the Receiver from the restrictions and property turnover requirements imposed under Bankruptcy Code sections 543(a) and 543(b)(1) and permit the Receiver to continue her administration of the Property and perform all other functions authorized or directed by the Superior Court Orders. In furtherance of her duties, the Receiver will need to utilize cash collateral, which Bank of Marin does not oppose so long as such use is limited to property-related expenses.

BN 12088000v2

8

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Case: 12-56050  Doc# 11  Filed: 08/22/12  Entered: 08/22/12 14:03:37  Page 8 of 10

### A. The Receiver Must Be Permitted To Remain In Place As The Requirements Of Bankruptcy Code Section 543(d)(1) Are Satisfied.

The Receiver is best equipped to preserve the value of the Property. Subsection (d)(1) of Section 543 of the Bankruptcy Code authorizes the Bankruptcy Court to excuse a receiver from requirements under subsections (a), (b), and (c) if the interests of creditors would be better served by permitting the receiver to continue in possession, custody, and control of property. Considering the facts of this case, the Receiver is clearly in a position to ensure that the interests of creditors are better served.

While the Bankruptcy Code does not set forth a specific test for making such a determination, Courts have established several exemplary criteria for making this determination, including whether there are prior instances of mismanagement by the Debtor. Here, that question is easily answered. The Debtor's failure to manage properly the Property is evident from its treatment of the CAM charges and its failure to pay over two years of real property taxes. As the Debtor continued to ignore its property tax obligations for over two years, it collected, from the Property's tenants, monthly CAM charges that were supposed to be used partly to pay real property taxes. Instead of properly using CAM charges, or satisfying its obligations to Bank of Marin, in 2011 and 2012, the Debtor distributed over $256,300 and $197,400, respectively, in "owner" distributions. In addition, over $35,000 in tenant security deposits, representing all security deposits, have disappeared.

There is no reason to believe that other creditors' interests will suffer by keeping the Receiver in place. To the contrary, excusing the Receiver from turnover will benefit the creditors and prevent continued deterioration at the Property should Debtor continue to abscond with the tenants' (and prospective tenants') rents and security deposits and convert the funds to its personal use instead of using them for operations of the Property.

### B. The Receiver Must Be Permitted To Use Rent Proceeds To Pay For Property-Related Expenses.

In order for the Receiver to perform her duties under the Superior Court Orders, she will be required to use cash collateral for various expenses, including those discussed above and

BN 12088000v2     9

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case: 12-56050   Doc# 11   Filed: 08/22/12   Entered: 08/22/12 14:03:37   Page 9 of 10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

outlined in further detail in the Receiver Declaration. Bank of Marin requests that the Court grant the Receiver the authority to use cash collateral pursuant to Bankruptcy Code section 363 for the purpose of paying those expenses incurred as a result of the performance of her duties under the Superior Court Orders. Furthermore, Bank of Marin requests that the Court authorize the Receiver to obtain credit and incur debt pursuant to Bankruptcy Code section 364 to the extent necessary for the Receiver to perform her duties as authorized by the Receiver Order through the issuance of Receiver Certificates.

### C. Relief Must Be Granted Under § 362(d)(2) to Allow the Receiver to Exercise her Duties.

Bank of Marin requests that the Court grant the Receiver relief from the automatic stay for cause pursuant to Bankruptcy Code section 362(d)(1) in order to allow the Receiver to continue immediately her administration of the Property and perform all other functions authorized or directed by the Superior Court Orders.

WHEREFORE, Bank of Marin respectfully requests that the Court issue an Order (i) excusing the Receiver from the restrictions and property turnover requirements imposed on custodians of property of Debtor's estate under Bankruptcy Code section 543(a) and section 543(b)(1) effective *nunc pro tunc* to the Petition Date, (ii) permitting the Receiver to continue her administration of the Property, including performing all other functions authorized or directed by the Superior Court Orders, (iii) authorizing the Receiver to use cash collateral on a limited basis, (iv) authorizing the Receiver to obtain credit and incur debt and (v) granting relief from the automatic stay as set forth herein.

DATED: August 22, 2012

BUCHALTER NEMER
A Professional Corporation

By: _____

Attorneys for BANK OF MARIN

BN 12088000v2    10

MOTION FOR ORDER EXCUSING RECEIVER FROM COMPLIANCE WITH 11 U.S.C. §§ 543(a) AND 543(b)(1); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Case: 12-56050   Doc# 11   Filed: 08/22/12   Entered: 08/22/12 14:08:37   Page 10 of 10