LAW OFFICE OF PATRICK CALHOUN
PATRICK CALHOUN, ESQ. (BAR #56671)
10797 Ridgeview Way,
San Jose, California 95127
(408722-8099
calhounonekgatty@aol.com

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In Re: | Case No. 12-56050 SLJ |
| Auto Care Mall of Fremont Inc | Chapter 11 |
| Debtor(s). | **MOTION TO APPROVE TERMS OF SETTLEMENT BY AND BETWEEN DEBTOR AND BANK OF AMERICA** |
| | **DATE 1/18/13**<br>**TIME 3:00 PM**<br>**JUDGE JOHNSON** |

    Debtor Fremont Auto Care Mall Inc hereby moves this court for Order approving terms of settlement between Fremont Auto Care Mall Inc and Creditor Bank of America.

    Fremont Auto Care Mall Inc is the debtor in this Chapter 11 proceeding. Bank of America is a third deed of trust holder. The deed of trust was created as result of law suits between Daniel Duc and Flipper Marine. Daniel Duc and Flipper Marine as result of the law suit became indebted to Bank of America in the amount of approximately 6 million dollars. As result of negotiations between parties Fremont Auto Care Mall Inc agreed to cross collateralize the debt against assets of debtor. Debtor Fremont Auto Care Mall Inc commenced adversary proceedings against Bank of America with among other claims, sought to set aside the security interest of the Bank of America .

FREMONT AUTO CARE MALL INC MOTION TO APPROVE TERMS OF SETTLMENT

Daniel Duc and Flipper Marine and Debtor herein and Bank of America have come to a global settlement of their differences. The global settlement as it pertains to this Chapter 11 proceedings is as follows: In exchange for the payment of the sum of $700,000.00 Bank of America will set aside or otherwise reconvey the subject deed of trust which is in the third position on the property of the Debtor's estate. Debtor will dismiss its action the subject matter of adversary proceeding before this Court No 12-05201. All obligations from this Debtor to Bank of America will be satisfied, all claims of Debtor against Bank of America as result of this transaction are likewise settled and released for all purposes. A copy of the Settlement Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

All funds will be paid on or before January 31, 2013 as part of the global settlement.

Dated: January : , 2015

                                          /s/ *Patrick Calhoun*_____
                                        Patrick Calhoun Attorney for Debtor

# EXHIBIT A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made effective as of January 9, 2013 by and among Bank of America, N.A. ("Bank"), on the one hand, and Flipper Marine, Limited ("Borrower"), Daniel Duc ("Guarantor"), Flipper Marine, LLC ("FMLLC") and Auto Care Mall of Fremont, Inc. ("ACMF") on the other hand, (Borrower, Guarantor and FMLLC are collectively referred to as "Defendants") (ACMF and Defendants are collectively referred to as "Obligors"), (Bank and Obligors are collectively referred to as the "Parties") with respect to the following facts:

## RECITALS

A.  WHEREAS, on October 20, 2010, the Bank filed a complaint ("Complaint") against Defendants, Santa Clara County Superior Court Case No. 110CV185429 ("Action"), arising out of a Loan and Loan Documents (as defined in the Complaint) made by Bank to Borrower;

B.  WHEREAS, on March 17, 2011, Bank and Defendants entered into a Settlement Agreement ("2011 Agreement") whereby Bank and Defendants conditionally settled pending litigation between them and Defendants agreed to make certain payments to Bank thereunder, with a Stipulation for Entry of Judgment ("Stipulation") in favor of Bank in the event of default under the 2011 Agreement;

C.  WHEREAS, as part of the 2011 Agreement, ACMF pledged the real property located at 40851-40967 Albrae Street, Fremont, California 94538 ("Property") as security for the Defendants' payment obligations under the 2011 Agreement, as evidenced by a third priority Deed of Trust in favor of Bank, recorded in the official records of Alameda County on April 1, 2011 as document number 2011097445 ("Deed of Trust");

D.  WHEREAS, Defendants defaulted under the terms of the 2011 Agreement and Bank obtained judgment against Guarantor and FMLLC on December 28, 2011 ("Judgment") and an Amended Judgment to include FML on March 9, 2012 ("Amended Judgment") in the amount of $5,857,308.05 with interest accruing at ten percent (10%) per annum ($585,730.805 in interest per annum or $1,604.74, per day);

E.  WHEREAS, from March 10, 2012 to November 20, 2012, $410,813.44 in interest accrued on the Amended Judgment, making the total amount due under the Amended Judgment $6,268,121.49;

F.  WHEREAS, on November 21, 2012, the Bank sold the Yacht (as defined in the Complaint in the Action) for the gross sum of $2,800,000.00 and agreed to credit Obligors the gross amount of the sale toward the Amended Judgment, making the amount due as of November 21, 2012 the sum of $3,468,121.49 (with interest accruing at the rate of $346,812.149 per annum or $950.17 per day);

G.  WHEREAS, as of January 9, 2013, Defendants will be indebted to the Bank in the minimum amount of **$3,515,629.99**;

H.  WHEREAS, Obligors agree and acknowledge that the Judgment and Amended Judgment are valid and not subject to any challenge whatsoever;

1

I. WHEREAS, Obligors agree and acknowledge that the Deed of Trust is a valid and binding obligation of ACMF;

J. WHEREAS, Obligors agree and acknowledge that the Judgment and Amended Judgment do not violate the anti-deficiency and/or single-action laws of the State of California including, but not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure;

K. WHEREAS, ACMF agrees and acknowledges that it made a valid waiver of the protections of the anti-deficiency and single-action laws of the State of California including, but not limited to, any rights or defenses that are based upon, directly or indirectly, the application of Sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure, in the Deed of Trust;

L. WHEREAS, ACMF filed a voluntary petition on August 15, 2012 for relief under Chapter 11 of the United States Bankruptcy Code, Case No. 12-56050 SLJ ("Bankruptcy Action"). ACMF further filed an Adversary Complaint against Bank in the Bankruptcy Action on October 11, 2012 for alleged Forfeiture/Waiver of Security, Declaratory Relief and Injunctive Relief, Adversary No. 12-05201 ("Adversary Proceeding"). Bank has filed a Motion to Dismiss the Adversary Proceeding, which motion is currently pending; and

M. WHEREAS, Bank has filed Motions for Orders Charging Guarantor's interest in Willow Berm Nexgen, LLC and Ox Bow Marina General Partnership.

## AGREEMENT

**NOW THEREFORE,** in consideration of the foregoing and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. Recitals. Each of the above recitals is incorporated herein and deemed to be the agreement of the Parties and is relied upon by each party to this Agreement in agreeing to the terms of this Agreement. Such recitals are binding in accordance with Evidence Code section 622.

2. Conditions Precedent. The Parties understand that this Agreement shall not be effective and Bank shall have no obligation hereunder until each of the following conditions precedent have been satisfied not later than January 8, 2013, or waived by the Bank (in the Bank's sole discretion):

    a. Delivery of Agreement. Obligors shall have executed and delivered to Bank this Agreement;

    b. Motion to Approve Settlement. ACMF shall have filed a Motion for Bankruptcy Court approval of the terms and conditions of this Agreement pursuant to Federal Rules of Bankruptcy Procedure, Rule 9019; and

    c. Other Actions. Obligors shall have taken any and all actions and executed and delivered to Bank any and all documents necessary or appropriate in the Bank's discretion to effectuate the terms of this Agreement.

3. <u>Payment Terms</u>. Obligors shall pay to Bank the sum of Seven Hundred Thousand and no/100 dollars ($700,000.00) ("Settlement Sum") on or before January 31, 2013. Payment of the Settlement Sum shall be made by wire transfer to Bank. Wire transfer instructions are as follows:

>Account Name: Bank of America-Boston, MA
>Beneficiary: Bank of America
>ABA/Routing #: 026009593
>Credit to A/C #: 136621-1001000
>Address: 1237 Commonwealth Avenue, Boston, MA 02134
>Attn: Emilie Rovario, Phone: 602-523-2132
>Ref: Flipper Marine Ltd, Loan # 16-919797-265

4. <u>Dismissal of Adversary Proceeding</u>. Within five (5) days of execution of this Agreement, Bank shall have consented to in writing and ACMF shall have dismissed the Adversary Proceeding, with prejudice.

5. <u>Reconveyance</u>. Ninety-one (91) days following Bank's receipt and confirmation of good funds as to the entirety of the Settlement Sum, Bank shall transmit to counsel for ACMF, a full reconveyance of the Deed of Trust, suitable for recordation.

6. <u>Judgment Enforcement Actions</u>. Within five (5) days following Bank's receipt and confirmation of good funds as to the entirety of the Settlement Sum, Bank will file with the Court in the Action, Full Acknowledgements of Satisfaction of Judgment as to Defendants, and Bank shall take all Motions for Charging Order off calendar and cease all collection efforts.

7. <u>Representations and Warranties</u>. Obligors hereby represent and warrant to Bank that: (a) execution, delivery and performance by Obligors of this Agreement, has been duly authorized, are not in conflict with the terms of any organizational document of Obligors and will not violate any law, rule or order of any court or governmental agency or body to which Obligors are subject. Obligors understand and acknowledge that the Bank is entering into this Agreement in reliance upon, and in partial consideration for, this acknowledgment and representation, and agree that such reliance is reasonable and appropriate.

8. <u>Events of Default</u>. Except as modified by this Agreement, in addition to the events of default set forth in the Loan Documents, the occurrence of any of the following events of default shall be an event of default ("Event of Default"):

>a. <u>Failure to Perform</u>. Failure to perform any of the obligations (including, but not limited to, payment obligations) set forth in this Agreement;

>b. <u>Representations</u>. Any material representation or warranty of Obligors herein or in any other Loan Document that is false or misleading.

9. <u>Remedies</u>. If an event of default under any of the Loan Documents and/or an Event of Default under this Agreement occurs and is not timely cured, and at all times thereafter, Bank shall be entitled to exercise all rights and remedies available to Bank as a creditor generally, including without limitation, all remedies available to the Bank under the Enforcement of Judgment laws of the State of California, as well as rights and remedies available to Bank at law or in equity. All such rights and remedies shall be cumulative. No failure or delay on the part of Bank in exercising any power, right or remedy under any of the

3

Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any such power, right or remedy shall preclude any further exercise thereof or the exercise of any other power, right or remedy.

10. <u>Obligors' Release</u>. Upon the effective date of this Agreement Obligors hereby, for themselves, their successors, heirs, executors, administrators and assigns (each a "Releasing Party" and collectively, the "Releasing Parties"), releases, acquits and forever discharges Bank, its directors, officers, employees, agents, attorneys, affiliates, successors, administrators and assigns ("Released Parties") of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which any Releasing Party might have because of anything done, omitted to be done, or allowed to be done by any of the Released Parties and in any way connected with the Loans or this Agreement, the Judgment, Amended Judgment, Deed of Trust or the other Loan Documents, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, including, without limitation, any settlement negotiations and any damages and the consequences thereof resulting or to result from the events described, referred to or inferred hereinabove, including, but limited to, all claims that Released Parties violated the anti-deficiency and/or single-action laws of the State of California and all matters that relate to the Action and Adversary Proceeding, ("Released Matters"). Releasing Parties each further agree never to commence, aid or participate in (except to the extent required by order or legal process issued by a court or governmental agency of competent jurisdiction) any legal action or other proceeding based in whole or in part upon the foregoing. In furtherance of the general release above, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Releasing Parties each agree that this waiver and release is an essential and material term of this Agreement and that the agreements in this paragraph are intended to be in full satisfaction of any alleged injuries or damages in connection with the Released Matters. Releasing Parties each represent and warrant that it has not purported to convey, transfer or assign any right, title or interest in any Released Matters to any other person or entity and that the foregoing constitutes a full and complete release of the Released Matters. Releasing Parties each also understand that this release shall apply to all unknown or unanticipated results of the transactions and occurrences described above, as well as those known and anticipated. Releasing Parties each has consulted with legal counsel prior to signing this release, and executes such release voluntarily, with the intention of fully and finally extinguishing all Released Matters.

11. <u>Bank's Release</u>. Save and except for the obligations under this Agreement, upon the effective date of this Agreement, Bank hereby, for itself, its successors, heirs, executors, administrators and assigns (each a "Releasing Party" and collectively, the "Releasing Parties"), releases, acquits and forever discharges Obligors, their directors, officers, employees, agents, attorneys, affiliates, successors, administrators and assigns ("Released Parties") of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which any Releasing

4

Party might have because of anything done, omitted to be done, or allowed to be done by any of the Released Parties pertaining to the matters stated in this Agreement, the Judgment, Amended Judgment, Deed of Trust or the other Loan Documents, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, including, without limitation, any settlement negotiations and any damages and the consequences thereof resulting or to result from the events described, referred to or inferred hereinabove, ("Released Matters"). Releasing Parties each further agree never to commence, aid or participate in (except to the extent required by order or legal process issued by a court or governmental agency of competent jurisdiction) any legal action or other proceeding based in whole or in part upon the foregoing. In furtherance of the general release above, Releasing Parties each acknowledge and waive the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Releasing Parties each agree that this waiver and release is an essential and material term of this Agreement and that the agreements in this paragraph are intended to be in full satisfaction of any alleged injuries or damages in connection with the Released Matters. Releasing Parties each represent and warrant that it has not purported to convey, transfer or assign any right, title or interest in any Released Matters to any other person or entity and that the foregoing constitutes a full and complete release of the Released Matters. Releasing Parties each also understand that this release shall apply to all unknown or unanticipated results of the transactions and occurrences described above, as well as those known and anticipated. Releasing Parties each has consulted with legal counsel prior to signing this release, and executes such release voluntarily, with the intention of fully and finally extinguishing all Released Matters. This Release shall not apply to, and is not intended to effectuate a release of any loans between the Parties, other than those Loans referenced in the Complaint. This Release shall be void *ab initio* in the event of a Reversal of Payment as defined herein.

12. <u>Dispute Resolution</u>. This Agreement hereby incorporates any alternative dispute resolution agreements, if any, previously, concurrently or hereafter executed between Borrower, Guarantor, and Bank.

13. <u>Reversal of Payments</u>. If Bank receives any payments or rents, issues, profits or proceeds of collateral which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be paid to a trustee, receiver or any other party under any bankruptcy law, common law, equitable cause or otherwise ("Reversal of Payments"), then, to such extent, the obligations or part thereof intended to be satisfied by such payments or proceeds shall be reserved and continue as if such payments or proceeds had not been received by the Bank.

14. <u>Severability</u>. In case any provision of this Agreement shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Agreement and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

5

15. <u>Applicable Law; Jurisdiction</u>. Except as otherwise provided herein, this Agreement and the rights and obligations of the Parties hereto shall be governed by the laws of the State of California without regard to principles concerning choice of law.

16. <u>Attorneys' Fees</u>. Obligors shall reimburse Bank for any reasonable costs and reasonable attorneys' fees incurred by Bank in the future in connection with the enforcement or preservation of any rights or remedies under this Agreement and any other documents executed in connection with this Agreement. In the event of a lawsuit or arbitration proceeding, the prevailing party is entitled to recover reasonable costs and reasonable attorneys' fees incurred in connection with the lawsuit or arbitration proceeding, as determined by the court or arbitrator. In the event that any case is commenced by or against the Defendants under the Bankruptcy Code (Title 11, United States Code) or any similar or successor statute, Bank is entitled to recover reasonable costs and reasonable attorneys' fees incurred by Bank related to the preservation, protection, or enforcement of any rights of Bank in such a case. As used in this paragraph, "attorneys' fees" includes the allocated costs of Bank's in-house counsel. All of such costs and expenses shall bear interest from the time of demand at the judgment rate of ten percent (10%) per annum.

17. <u>Binding Agreement</u>. This Agreement shall be binding upon and inure to the benefit of the Parties, and their respective employees, agents, attorneys, successors, devises, executors, administrators, assigns, and insurance carriers. The Parties executing this Agreement represent and warrant that each is duly authorized to execute this Agreement. All Parties warrant that they are the true holders of all rights and remedies which they purport to release, and that they have not assigned or transferred any of those rights or remedies to any other individuals and/or entities.

18. <u>No Waiver</u>. The waiver or failure to enforce any provision of this Agreement shall not operate as a waiver of any future breach of any such provision or any other provision hereof.

19. <u>No Third Party Beneficiaries; Assignment by Parties</u>. Nothing in this Agreement, expressed or implied, is intended to confer any rights or remedies upon any other person. Notwithstanding the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their successors and assigns.

20. <u>Notices</u>. Any notice which a party is required or may desire to give the other shall be in writing and may be sent by (i) facsimile or e-mail transmission, (ii) personal delivery, (iii) by United States registered or certified mail, return receipt requested, postage prepaid, or (iv) by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery, addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

To the Obligors:	FLIPPER MARINE LIMITED (Attn: Daniel Duc)
	FLIPPER MARINE, LLC (Attn: Daniel Duc)
	DANIEL DUC (Guarantor)
	AUTO CARE MALL OF FREMONT, INC.
	14107 Winchester Blvd., Suite H
	Los Gatos, California 95032
	dduc@ducdevelopment.com

| | |
|---|---|
| With a copy to: | Patrick M. Costello, Esq.<br>VECTIS LAW GROUP<br>PMB# 551, 270 Redwood Shores Pkwy<br>Redwood City, California 94065<br>Telephone: (650) 320-1688<br>Facsimile: (650) 320-1687<br>E-mail: pcostello@vectislawgroup.com |
| To Bank: | BANK OF AMERICA, N.A.<br>Attn: David B. Strong<br>201 East Washington Street, 20th Floor<br>AZ1-200-20-30<br>Phoenix, AZ 85004<br>Phone: (602) 523-2722<br>Facsimile: (602) 523-2750<br>david.b.strong@bankofamerica.com |
| With a copy to: | ASSAYAG ❖ MAUSS<br>Attn: Regis A. Guerin<br>2915 Redhill Avenue, Suite 200<br>Costa Mesa, California 92626<br>Telephone: (714) 427-6800<br>Facsimile: (714) 427-6888<br>E-mail: regisg@amlegalgroup.com |

Such notice shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, three (3) business days after the date of posting by the United States post office, (iii) if given by Federal Express or other overnight courier, twenty-four (24) hours after deposit thereof with such overnight courier, or (iv) if given by fax or electronic transmission, the same day of the sending of the fax or electronic transmission. Obligors shall notify Bank of any address changes for notice purposes under this Agreement within five (5) days of the change of address.

21.  Representation. The Parties acknowledge that each has been represented by counsel, or has had counsel available to them, throughout the pendency of the negotiation of this Agreement. Specifically, Obligors acknowledge that they have consulted with counsel and such other experts and advisors as they deem necessary in connection with the negotiation, execution and delivery of this Agreement. The Parties each agree that they are to be considered mutual authors of this Agreement.

22.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original document, and all of which together shall constitute a single instrument. Facsimile or electronic versions of signatures will have the same force and effect as original signatures.

23.  Entire Agreement. This Agreement is intended by the Parties as the final expression of their agreement and therefore contains the entire agreement between the Parties and supersedes all prior understandings or agreements concerning the subject matter hereof. This Agreement may only be amended in a writing signed by Parties. The Parties hereby agree and acknowledge that they will not claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

7

**IN WITNESS WHEREOF**, Bank and Obligors have executed this Agreement effective as of the date set forth in the preamble.

DATED: January _____, 2013

_____
DANIEL DUC - GUARANTOR

DATED: January _____, 2013          FLIPPER MARINE, LIMITED

By: _____
DANIEL DUC
Shareholder, Officer and Director

DATED: January _____, 2013          FLIPPER MARINE, LLC

By: _____
DANIEL DUC
Managing Member

DATED: January _____, 2013          AUTO CARE MALL OF FREMONT, INC.

By: _____
DANIEL DUC
President

DATED: January _____, 2013          BANK OF AMERICA, N.A.

By: _____
DAVID B. STRONG
SENIOR VICE PRESIDENT

8