UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE STEPHEN L. JOHNSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 12-56050 |
| | ) Chapter 11 |
| AUTO CARE MALL OF FREMONT, INC., | ) |
| | ) |
| Debtor. | ) Thursday, January 3, 2013 |
| | ) San Jose, California |

Hearing on:

a)   Motion for relief from stay, by Bank of Marin [45];
b)   Opposition by debtor;
c)   Motion to convert case to Chapter 7, by the Office of the U.S. Trustee [48];
d)   Response by Bank of Marin;
e)   Hearing re approval of the disclosure statement, by debtor [41];
f)   Objection by the U.S. Trustee;
g)   Objection by Bank of America;
h)   Objection by Bank of Marin; and
i)   Status conference [6], continued from December 17, 2012.


<u>Appearances</u>:

| | |
|---|---|
| For the Debtor: | Patrick Calhoun, Esq. |
| For Daniel Duke: | Patrick Costello, Esq. |
| For Bank of Marin: | Neil J. Rubenstein, Esq. |
| | Craig Chiang, Esq. |
| From the Office of the U.S. Trustee: | John S. Wesolowski, Attorney Advisor |
| For Bank of America: | Regis A. Guerin, Esq. (via telephone) |
| Digital Court Recorder: | United States Bankruptcy Court Clerk of the Court 280 South First Street, Room 3035 San Jose, California  95113 |
| Certified Electronic Transcriber: | Palmer Reporting Services |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 1 of 34

1  Thursday, January 3, 2013                         3:05 o'clock p.m.

2                    P R O C E E D I N G S

3          THE CLERK:  Court is now in session.

4          THE COURT:  Okay.  Good afternoon, everybody.

5          [COUNSEL]:  Good afternoon.

6          THE COURT:  Happy New Year.

7          THE CLERK:  This is the Court's 3:00 p.m. calendar, in

8  the case of Auto Care Mall of Fremont, Inc.  Could we have

9  appearances, please?

10         MR. CALHOUN:  Patrick Calhoun for the debtor.

11         THE COURT:  Okay.

12         MR. COSTELLO:  Good afternoon, Your Honor.  Patrick

13 Costello for Daniel Duke.

14         MR. RUBENSTEIN:  Good afternoon, Your Honor.  Neil

15 Rubenstein and Craig Chiang for Bank of Marin.

16         MR. WESOLOWSKI:  And John Wesolowski for the U.S.

17 Trustee.

18         MR. GUERIN:  Good afternoon, Your Honor.  Regis Guerin

19 for secured creditor Bank of America.

20         THE COURT:  Okay.  Good afternoon to everybody.

21 Please be seated.  Sorry.

22         All right.  So this is — this is a motion —

23 effectively it's a motion for relief for stay that was brought

24 by Bank of Marin, who has installed a receiver at the property,

25 who the Court has left in place during the pendency of the

1    bankruptcy case.

2            And because the Court earlier found it's a single-

3    asset real estate case, the debtor was obliged to file, I

4    suppose, a response to the motion for relief from stay or under

5    362(d)(3), wisely filed a plan and disclosure statement within

6    90 days.  I don't think that there's any argument that the other

7    prong of that test, which is making payments, applies here.  So

8    what we're really dealing with is whether the debtor has a plan

9    that can be confirmed, has a reasonable possibility of being

10   confirmed in a reasonable amount of time.

11           Is that right?

12           MR. CALHOUN:  Well, yes, Your Honor, except that we

13   basically have gone way past that and I believe we have a global

14   settlement.

15           THE COURT:  Okay.

16           MR. COSTELLO:  With I think pieces broken — pieces

17   trying to break out in the last several days, which —

18           THE COURT:  Okay.  This would be a good time to inject

19   piece because I'm about to —

20       (Laughter.)

21           THE COURT:  — I'm about to tell you what I think of

22   this whole thing.  In fact, —

23           MR. COSTELLO:  And, well, then perhaps —

24           THE COURT:  You can't see it, but I could read this to

25   you right now.  So what would like to tell me about resolving

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 3 of
34

1    the matter?

2          MR. CALHOUN:  Basically, —

3          MR. COSTELLO:  Well, Your Honor, — yeah, I think Mr.

4    Calhoun will present it, but there are arrangements with both

5    Bank of America and Bank of —

6          THE COURT:  Bank of Marin too?

7          MR. COSTELLO:  Yes.

8          THE COURT:  Okay.  Okay.  All right.

9          MR. CALHOUN:  And — and with Mr. Duke and Flipper

10   Marine, the judgments that they have there, which is the cross-

11   collateralized Bank of America loan that we have on the

12   debtor's —

13          THE COURT:  That's the deed of trust that Bank of

14   America has.

15          MR. CALHOUN:  Correct.

16          THE COURT:  All right.

17          MR. CALHOUN:  So as of, I believe, yesterday or the

18   day before, we did receive written confirmation that BofA, Mr.

19   Duke, Flipper Marine, and the debtor would have come to a

20   settlement on the Bank of America obligation.  For the payment

21   of $700,000, they will release their deed of trust.  I will let

22   Mr. Costello speak further, if he wants to, or if the Court

23   wants to hear more about the global aspects of the settlement,

24   but basically that $6 million judgment is going to be taken care

25   of with this $700,000 payment.  What it does to this case is it

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 4 of
34

1  eliminates the deed of trust against the property so that we

2  will be clean of that debt and the adversary proceeding that's

3  pending there.

4           In addition to that, the debtor has arranged pursuant

5  to its draft of a new disclosure statement, whereby we indicated

6  we were going to pay everybody 100 cents on the dollar, we are —

7  have rec- — and immediately we have received commitments in

8  writing that, subject to the Bank of America settlement, that we

9  have raised the money necessary to fully reinstate the Bank of

10 Marin loan, pay all arrearages and taxes, and everybody will be

11 paid 100 cents on the dollar.

12          THE COURT:  Are you proposing to pay them in full,

13 like pay them off?

14          MR. CALHOUN:  Yes — no.

15          MR. COSTELLO:  No.  Reinstate.

16          MR. CALHOUN:  Reinstate.

17          THE COURT:  Reinstate, okay.  And — all right.  And

18 then are you paying the amount that they're claiming or are you

19 reserving the right to object?

20          MR. CALHOUN:  Only reserving the right to object in

21 state court as to the receiver's numbers and fees.  We have seen

22 them.  We don't think we have any problems with them.  Neither

23 Mr. Duke nor the debtor feels they have any problems with them

24 or that there will be any contest with those numbers.  But we —

25 those numbers — the ability to contest that in state court is

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 5 of
34

1    being reserved.

2            THE COURT:  Okay.  And that seems consistent with what

3    you had filed before.  And then the resolution of this case?

4            MR. CALHOUN:  Whatever the Court's desire.  We talked

5    with Mr. — the trustee this afternoon briefly.  He feels that

6    the matter, once it's paid off, it's going to be very short

7    order, but once it's paid off, that we just basically dismiss,

8    which is fine with us.  If the Court would rather have us

9    complete a plan, but there would be nobody to vote left, so I

10   don't know what's going out happen, would happen in that vein

11   either.  But if the Court wants to keep its finger on it — the

12   Court would always have its finger on it until their — the Bank

13   of Marin signs off and they've been paid.  But whether for the

14   sake of costs of administration and so forth, the Court wants to

15   continue it, they can, or we can just dismiss it.

16           THE COURT:  And the Bank of Ame- — sorry.  The Bank of

17   Marin note will remain on the property, the promissory note, and

18   the deed of trust will remain on the property, it will just be

19   paid consistent with the terms of the existing arrangement?

20           MR. RUBENSTEIN:  Yeah.  I think we have an agreement

21   in substance, but I don't think it's procedurally the way it's

22   set forth.

23           THE COURT:  Okay.

24           MR. RUBENSTEIN:  And I don't think we have an

25   agreement, because actually I did a written term sheet which I

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 6 of
34

1  think they're agreed with.  Maybe I can just kind of tell the

2  Court what we understand it to be.  And, again, I don't think

3  there's susbstantively different disagreement, —

4          THE COURT:  Okay.

5          MR. RUBENSTEIN:  — but I —

6          MR. COSTELLO:  Well, yeah, that's subject to Mr.

7  Calhoun.  I wouldn't have any objection if you have another copy

8  of this term sheet, presenting it to the Judge so the Judge

9  has —

10         MR. RUBENSTEIN:  Actually that was —

11         MR. CALHOUN:  I'll bring up mine.

12         MR. RUBENSTEIN:  Okay.

13         MR. CALHOUN:  So that's fine.

14         THE COURT:  We can actually make a copy.

15         Tanya, could you just make —

16         THE CLERK:  Sure.

17         MR. [SPEAKER]:  Your Honor, could I get a copy too,

18  please?

19         THE COURT:  Yeah.

20         Just — I guess make two.  Thank you.

21         Okay.  So we'll have the term sheet and we'll look at

22  that.

23         Mr. Rubenstein, you started to talk about you think

24  you have the terms of a deal but not the procedure of a deal?

25         MR. RUBENSTEIN:  No.  The — the procedure's in the

1    term sheet.

2              THE COURT:  Okay.

3              MR. RUBENSTEIN:  I'm saying I think the procedure's a

4    little different than what Mr. Calhoun just said.

5              THE COURT:  Okay.  Why don't you tell me what you

6    think is going to happen from this point forward.

7              MR. RUBENSTEIN:  Okay.  This — I'm reading from the

8    term sheet that you're going to get in a second —

9              THE COURT:  Okay.  That's fine.

10             MR. RUBENSTEIN:  Okay.

11             THE COURT:  That's probably fine.  Go ahead.

12             MR. RUBENSTEIN:  Okay.  Point one, Bank of Marin is

13   granted relief from the automatic stay as requested in the

14   motion, that the order granting it will be granted today at this

15   hearing.

16             THE COURT:  Okay.  Go ahead.  That's fine.

17             MR. RUBENSTEIN:  And that is to exercise any and all

18   of its rights and remedies under its loan documents and

19   applicable law in connection with the real property and

20   improvements, commonly known as 40851 to 40967 Albrae Street,

21   Fremont, California, and all leases, grants, revenues, income,

22   issues, and profits derived from the property.  While the Court

23   is entering the order and granting the motion today, relief is

24   effective January 31st, 2013.

25             THE COURT:  Okay.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 8 of
34

1      MR. RUBENSTEIN:  The 14-day stay of the order

2  otherwise provided in Bankruptcy Code Rule 4001(a)(3) is waived.

3          In connection with the Bank of America settlement, and

4  we'll talk about this a little bit later, is they're going to be

5  asking the Court for an order shortening time to get Court

6  approval of the BofA settlement.  And if the Court will not

7  grant a hearing date to consider approval of debtor's settlement

8  agreement with Bank of America on or before January 18th, 2013,

9  the effective date of relief from the automatic stay will be

10  February 15th, 2013, rather than January 31st.

11          MR. COSTELLO:  Maybe we can just slightly depart from

12  the term sheet and explain that a little bit right now, Your

13  Honor.  And the BofA settlement is a payment in full for

14  $700,000.  Now that is not coming from estate funds.  It's not

15  estate funds.  However, Bank of Marin — Bank of America believes

16  it would be appropriate for the debtor to sign the settlement

17  agreement.  And I suspect we have the terms — you know,

18  agreement in principle, but we haven't seen the agreement — I

19  suspect there may even be a release in there, which would

20  require Bankruptcy Court approval.

21          THE COURT:  Okay.

22          MR. COSTELLO:  But — and we're looking — we're on a

23  tight — on a short leash with Bank of Marin to get this whole

24  thing done by the 31st.  That's why we're targeting the 18th,

25  because BofA has to be in place before we can do the

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 9 of
34

1    reinstatement.

2              THE COURT:  Okay.

3              MR. COSTELLO:  And so we're looking for shortened time

4    on that.  I think certainly Mr. Duke's position is, is that it's

5    appropriate — it would be appropriate to grant the order

6    shortening time given that the settlement is essentially using —

7    involves the payoff of Bank of America from nonstate funds.

8    The only reason to have Bankruptcy Court approval is because the

9    debtor is, in fact, signing off on the settlement agreement.

10             THE COURT:  Well, and the debtor listed the claim,

11   that it had a claim against Bank of America that was very

12   substantial.  If I recall, Exhibit B has like a $5 million claim

13   against Bank of America, right?

14             MR. CALHOUN:  Yes.

15             THE COURT:  Okay.  I think that under Rule 9013 I can

16   make — I can shorten time on oral motion if it's made in the

17   middle of a hearing, and here we are.  So I think we can, before

18   we terminate this hearing, we can pick times and dates for

19   hearings on an order shortening time.  And the parties who are

20   affected by that motion are present and can stipulate to

21   whatever we agree to.

22             MR. CALHOUN:  And I think —

23             THE COURT:  All right.  So that I think we can deal

24   with.

25             Okay.  So then point number two, moving onto your

Case: 12-56050    Doc# 107    Filed: 03/18/13    Entered: 03/18/13 07:59:58    Page 10 of
34

1  settlement agreement.  So, Mr. Rubenstein, did you want to

2  address point number two?

3              MR. RUBENSTEIN:  Sure.  Okay.  During the period

4  before the termination of the automatic stay, under point one,

5  the debtor or Daniel Duke or some combination of them, with his

6  own funds, will have the opportunity to reinstate the Bank of

7  Marin loan secured by the deeds of trust on the property in

8  accordance with nonbankruptcy law.

9              THE COURT:  Okay.

10             MR. RUBENSTEIN:  As you may recall, there are two

11 notes and two deeds of trust.

12             THE COURT:  Right.

13             MR. RUBENSTEIN:  Okay.  The third item is simply put

14 in at the request of the debtor because they're concerned they

15 might be blindsided with something.  It doesn't really add

16 anything substantive, but it's just kind of a comfort provision

17 that they asked me to read on the record, which I'm doing.

18             Based on information currently available to Bank of

19 Marin, there are no existing nonmonetary defaults on which it

20 would rely in seeking to foreclose on its deeds of trust on the

21 real property.  It's conceivable that there exists some

22 nonmonetary default, of which Bank of Marin is not currently

23 aware that would justify Bank of Marin taking some enforcement

24 action.  Bank of Marin is not waiving its right to take such

25 action.

Case: 12-56050    Doc# 107    Filed: 03/18/13    Entered: 03/18/13 07:59:58    Page 11 of
34

1          THE COURT:  Okay.

2          MR. RUBENSTEIN:  Okay.  And four is the provision

3    about the settlement between the debtor and Daniel Duke relating

4    to Bank of America, which has already been discussed with you.

5          THE COURT:  And all you're really doing is reciting

6    that there is expected to be a settlement, $700,000, for release

7    of the lien filed against the debtor's property?

8          MR. COSTELLO:  Just to clarify, Your Honor, that is

9    it's more than just a release, it's a payoff of BofA in total.

10          THE COURT:  Okay.

11          MR. RUBENSTEIN:  And also they asked us to state,

12    which is — we had no problem with, that Bank of Marin has no

13    objection to such a settlement between the debtor and Bank of

14    America, and has no objection to the Court issuing an order

15    shortening time to consider that.

16          THE COURT:  Okay.

17          MR. RUBENSTEIN:  This is obviously based on the

18    understanding that the $700,000 is coming from funds other than

19    funds of the estate.

20          THE COURT:  Okay.

21          MR. RUBENSTEIN:  Item five, the Bankruptcy Court has

22    previously issued an order excusing the receiver from compliance

23    with Bankruptcy Code sections 543(a) and 543(b)(1), which was

24    subsequently amended by an order entered on December 28th.  The

25    order as amended states that it will remain effective through

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 12 of
34

1   and including January 31st, 2013, except that any party-in-

2   interest may request a further extension of the deadline.

3              As you will recall, that was the order about the —

4   excusing the receiver from having to turn over the property in

5   her possession.  The parties have agreed that the existing

6   January 31, 2013 deadline in that order would be extended to

7   February 28th, 2013, with the other provisions of the Bankruptcy

8   Court order to remain unchanged.

9              THE COURT:  Okay.

10             MR. RUBENSTEIN:  And obviously the Court would have to

11  do that, but that's what the parties would be requesting.

12             THE COURT:  Okay.

13             MR. RUBENSTEIN:  And this settlement is conditioned on

14  the Court actually issuing such an order.

15             Item six, if the Bank of Marin loans are reinstated in

16  accordance with nonbankruptcy law, Bank of Marin agrees that it

17  would promptly thereafter inform the receiver that the debtor

18  has cured the defaults under the existing loan documents, and

19  requests the receiver to act in accordance with paragraph 32 of

20  the receivership order entered in the state court action.  That

21  provision provides that for the receiver to immediately turn

22  over possession of the real property to the debtor upon the

23  occurrence of various events, one of which is being notified by

24  Bank of Marin that the loan has been cured.  It does not provide

25  for the receiver to turn over possession of the funds.  That's —

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 13 of 34

1   that's handled by another provision of the receivership order.

2   But as far as — this is talking about turning over the real

3   property to the debtor upon the loan being reinstated.

4           THE COURT:  So the debtor becomes — starts running the

5   property again?

6           MR. RUBENSTEIN:  Yes.

7           MR. COSTELLO:  Correct.

8           MR. RUBENSTEIN:  Right.

9           THE COURT:  All right.

10          MR. RUBENSTEIN:  Number seven is if the Bank of Marin

11  loans are reinstated in accordance with nonbankruptcy law, Bank

12  of Marin would support a request by the debtor to dismiss the

13  bankruptcy case.

14          There was one more item, which is not here, that we

15  have also, I think, have an agreement on.

16          THE COURT:  The copy that I have has Mr. Chiang's

17  interlineations.

18          MR. CHIANG:  Then that's the issue that Mr. Rubenstein

19  was about to bring up —

20          THE COURT:  Superior court.

21          MR. RUBENSTEIN:  About this —

22          MR. CHIANG:  This is first.

23          MR. RUBENSTEIN:  Yeah.  That's something we talked

24  about after I wrote this up.

25          THE COURT:  Okay.

1          MR. RUBENSTEIN:  If the parties will seek state court

2     approval to authorize release of an agreed-upon portion of the

3     funds the receiver is holding, which will be paid to Bank of

4     Marin and applied to the indebtedness owed by the debtor to Bank

5     of Marin.  The receiver is holding, I believe, approximately

6     $200,000.  Some portion of that, she needs to — you know, there

7     will be additional expenses and things of that nature, but she

8     doesn't need to be holding $200,000.

9          So the idea is that we will ask the superior court to

10    release some agreed-upon portion.  Obviously the receiver has to

11    buy off on what the agreed-upon portion is to be paid to Bank of

12    Marin, which would have the effect of reducing the additional

13    payment that has to be made — paid to Bank of Marin to reinstate

14    the loan.

15          THE COURT:  So you're going to take some of the money

16    that the receiver has and apply it to that arrearage, basically

17    to the arrearage claim?

18          MR. RUBENSTEIN:  Yes.

19          THE COURT:  Yes.

20          MR. RUBENSTEIN:  Yes, to the amount that is — yeah,

21    the arrearages, the amount that's —

22          MR. COSTELLO:  May not be necessary to reinstate —

23          MR. RUBENSTEIN:  — passed through.

24          THE COURT:  Okay.

25          MR. RUBENSTEIN:  Yeah.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 15 of
34

1          THE COURT:  All right.  So you're just getting —

2     somehow you're going — and is the debtor or Mr. Duke's counsel

3     going to be involved in coming up with that number?

4          MR. RUBENSTEIN:  Well, what we're going to do — as I

5     understand is they want the number to be as high as possible.

6     And so what really is going to turn out is we're going to talk

7     to the receiver about how much of a cushion she figures she

8     needs.

9          THE COURT:  Okay.

10          MR. RUBENSTEIN:  And also there is likely that certain

11     amount are — of Bank of Marin's attorney's fees that will be

12     incurred in winding up the receivership case will be paid out of

13     that.  So we've bandied about some numbers, but I don't have

14     something from the receiver —

15          THE COURT:  Okay.  And is that — the resolution of

16     that is going to take place in the superior court, though?

17          MR. RUBENSTEIN:  Right.

18          THE COURT:  That number, whatever —

19          MR. RUBENSTEIN:  Right.

20          THE COURT:  — number or dispute that — Mr. Calhoun,

21     you said earlier you may have issues with respect to payment of

22     the receiver for costs the receiver incurred —

23          MR. CALHOUN:  I don't expect to have them, but that

24     was being reserved.  And, just for the Court's information, the

25     trustee's fees have been paid —

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 16 of
34

1          MR. RUBENSTEIN:  Receiver.

2          MR. CALHOUN:  — receiver's — fees have been paid to

3     the receiver as they've gone along, —

4          THE COURT:  Okay.

5          MR. CALHOUN:  — collected the money.  So that portion

6     has been already paid.  So when we're talking about $200,000,

7     that is trus- — receiver has been paid.

8          THE COURT:  All right.

9          MR. RUBENSTEIN:  Well, but —

10         MR. CALHOUN:  There will be some dangling money.

11         MR. RUBENSTEIN:  Obviously the state court has to

12    approve the payment but, you know, she's — she's taken in her

13    own payments, just like in a bankruptcy case, subject to court

14    approval.

15              Now one of the — one of the things that will matter in

16    her deciding how much the cushion is going to be is whether

17    there is the potential of the debtor making a claim against her

18    in the receivership case because in which case she would

19    undoubtedly need to file — retain a lawyer.  So although we are

20    not making it a condition of the settlement that they say

21    they're not going to make a claim against the receiver, they

22    have already made a claim against the receiver.  I mean they've

23    sent some letters saying that they're going to be asserting a

24    claim.  And then my expectation is as long as that possibility

25    exists, the receiver is going to want to hold sufficient funds

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 17 of
34

1   from the receivership estate to be able to deal with it and

2   defend against it.

3          THE COURT:  Okay.

4          MR. RUBENSTEIN:  And so I mean — so that's one of the

5   reasons we don't know what the number's going to be.  Part of

6   it —

7          THE COURT:  Well, then some of it's in the debtor's

8   and Mr. Duke's control.

9          MR. RUBENSTEIN:  Exactly.

10         THE COURT:  Okay.

11         MR. COSTELLO:  And it's within — presumably that all

12  gets resolved, there will be — presumably by next week there

13  will be a stipulated motion or order in front of the state court

14  to allow the receiver to release funds —

15         THE COURT:  Okay.

16         MR. RUBENSTEIN:  Yeah.

17         MR. COSTELLO:  — and that presumably — that's where

18  the issue of the claims against the receiver could be dealt with

19  and resolved as well.

20         THE COURT:  Right.  That makes sense to me.  Okay.  So

21  in terms of what we need to accomplish here today, the first

22  thing it seems to me that we need to do is we need an order

23  shortening — I need to grant an order shortening time and find a

24  time to get the settlement between the debtor — I guess it's

25  between the debtor and Mr. Duke and Bank of America on the

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 18 of
34

1   calendar, so — so that we can see if there are objections and

2   whether that can be approved or not.

3           And we'd like to have that heard before — on or before

4   January 18th; is that right?

5           MR. CALHOUN:  That is what has been worked out between

6   — pretty much between Mr. Duke with Mr. Costello's office and —

7   and Bank of Marin.  I'm — I'm not trying to make the Court jump

8   over any barrels or anything like —

9           THE COURT:  I just have to see if I have time to do it

10  and —

11          MR. CALHOUN:  I know.  So I mean it's not important to

12  me as whether it's the 18th or the 31st or the 10th.

13          MR. COSTELLO:  But it is important in terms of what —

14  when the relief from stay is effective.  That's —

15          MR. CALHOUN:  Correct.

16          MR. COSTELLO:  We have a —

17          MR. RUBENSTEIN:  Well, the — the terms of the

18  agreement are is they're asking the Court to have it heard on or

19  before the 18th.  And the only reason it won't be heard before

20  or on the 18th is if it's not convenient to the Court.

21          THE COURT:  Why don't we do it three o'clock on

22  Wednesday, on the 17th.

23          THE CLERK:  Okay.

24          THE COURT:  So three o'clock on the 17th, which is a

25  Thursday.  Is that convenient for counsel?  And you can appear

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 19 of
34

1    by telephone.  You don't need to appear in court.  Then the

2    issue becomes —

3                MR. GUERIN:  This is Regis Guerin for Bank of America.

4    That's fine with us.

5                THE COURT:  The issue becomes an order?

6                MR. COSTELLO:  The issue — no.  The issue becomes when

7    the motion has to be served.

8                THE COURT:  Right, and a response made.

9                Is it your motion or is it your motion, Mr. Calhoun's

10   motion —

11               MR. COSTELLO:  It's Mr. Calhoun's motion.  It's the

12   debtor's motion.

13               THE COURT:  Okay.  So, Mr. Calhoun, how much time do

14   you need to make that motion?

15               MR. CALHOUN:  Tuesday.

16               THE COURT:  Tuesday of next week?

17        (No audible response.)

18               THE COURT:  Okay.  Filed and served by Tuesday of next

19   week, which, for the record, is the 8th.

20               Any objection to the proposed resolution can be made

21   at the time of the hearing on the 17th?  Otherwise I think the

22   time is much too short.  So anyone can object for any reason at

23   the hearing telephonically or in person.

24               And so — but the notice that you will give, Mr.

25   Calhoun, will simply say there's a hearing on that date, the

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 20 of
34

1   Court's shortened time, any objection should be raised at the

2   hearing.

3          MR. CALHOUN:  Fine.

4          THE COURT:  And then it's the 17th at 3:00.  All

5   right.  So that's point one.

6          Point two is this is really a resolution of the — the

7   relief-from-stay motion that your client made, counsel.  So I

8   think under — I don't think we need separate notice of this

9   whole business because I think under 4001(d)(4), we'll call it —

10  we don't have to get — we don't have to have separately noticed

11  out of hearing because this — the relief that you're seeking is

12  less, in your stipulation is less than you might have been

13  entitled to if you pressed the motion.  So I say you just have

14  to upload a stipulation that the parties have agreed to.  And if

15  it's consistent with what you've told me here today, I'll sign

16  an order approving it.

17         MR. RUBENSTEIN:  Okay.  Just — well, what I believe

18  the order in the agreement is, is the Court is just granting the

19  motion for relief from the automatic stay effective January

20  31st.

21         THE COURT:  Okay.

22         MR. RUBENSTEIN:  And with a 14-day waiver of Rule

23  4001.

24         THE COURT:  That's your point one.

25         MR. RUBENSTEIN:  Yeah.  Yeah.  I mean I don't — I

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 21 of
34

1  don't think all this other stuff is from the relief-from-stay

2  order.

3              THE COURT:  Okay.

4              MR. COSTELLO:  Agreed.  I think it just — it should be

5  an approved form of order, but I think it's a very simple order

6  that just grants relief from stay effective as of the 31st.

7              MR. CHIANG:  That's right, Your Honor.  I can just

8  upload or circulate an order granting — the proposed order

9  granting stay relief with —

10             THE COURT:  Okay.  That's —

11             MR. CHIANG:  — the effective dates.

12             MR. RUBENSTEIN:  Okay.

13             THE COURT:  I think the fastest thing would be if you

14 just have counsel sign off, otherwise we hold them.  But if you

15 have Mr. Calhoun and Mr. Costello sign off, then we'll move

16 forward with it —

17             MR. RUBENSTEIN:  If we can — well, obviously we'll

18 submit it to — generally, you'll be able to get to it promptly.

19             MR. [SPEAKER]:  Yes, agreed.

20             MR. RUBENSTEIN:  Okay.

21             THE COURT:  All right.  So that takes care of the

22 motion for relief from stay and the order shortening time.  Then

23 what remains I think is Mr. Wesolowski's motion to convert.

24             MR. RUBENSTEIN:  There's another motion —

25             THE COURT:  Okay.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 22 of
34

1      MR. RUBENSTEIN: — as well.  The Court had issued the

2  order confirming — excuse me — the order excusing the receiver

3  from compliance with Bankruptcy Code Section 543(a) and 543(b),

4  which currently has by its terms ends on January 31st, 2013,

5  unless further extended.  Then that order should be — it's

6  previously been amended once to go over — yeah, I think last

7  week the Court signed that order —

8      THE COURT:  Yeah.

9      MR. RUBENSTEIN: — going to January 31st, 2013.  It

10  should be amended a second time to go to February 28th, 2013,

11  with everything else in the order remaining the same.

12      THE COURT:  Any objection to that, gentlemen?

13      MR. COSTELLO:  Mr. Duke — the rationale, Your Honor,

14  is, is that if for some reason Mr. Duke and the debtor failed to

15  perform, Bank of Marin doesn't want to be in a situation where

16  come January 31st all of sudden the receiver is out of

17  possession and the debtor is back in possession.  So consistent

18  with — with the terms of our arrangement, Mr. Duke has no

19  objection to that.

20      THE COURT:  Okay.  And, Mr. Calhoun, you've previously

21  not liked the idea of the receiver.  Do you agree to a receiver

22  at this point —

23      MR. CALHOUN:  Well, I'm just a penny-pincher in the

24  sense that I don't like the fees that accrue.  I'd like some

25  recognition that we may not be charged for fees for February if

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 23 of
34

1   it's a one-day or a two-day deal.

2           THE COURT:  Well, I imagine the receiver is going to

3   act in every way fairly.  And so we'll — if necessary, I'll deal

4   with that, but I think it's actually something that the superior

5   court has to deal with, —

6           MR. CALHOUN:  Yeah.

7           THE COURT:  — the receiver being their creature, not

8   mine.

9           MR. CHIANG:  Then, Your Honor, would you like me to

10  circulate another — a second order extending that date?

11          THE COURT:  I think that makes sense because it keeps

12  the — it keeps the case in the same status while the matter is

13  resolved.  And I think earlier I concluded it made sense to

14  leave the receiver in place, which was a little unusual, but I

15  think under the facts still the right thing to do.  We'll just

16  continue the receiver in place and that will be the order.

17          MR. WESOLOWSKI:  And, Your Honor, the U.S. Trustee

18  originally had an objection to the receiver, but under the

19  circumstances I think what you're doing here is appropriate.

20          THE COURT:  Okay.  All right.  Well, thank you.

21          All right.  So, Mr. Chiang, I guess two orders.  One

22  is the on the relief from stay and the second on the receiver.

23  And I think it would be helpful if you had opposing counsel sign

24  off on both orders, so I know that the terms are consistent with

25  what they think is happening.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 24 of
34

1      MR. CHIANG:  I'll do that, Your Honor.

2      THE COURT:  Okay.  And then, counsel, if you could,

3  you know, be responsive to Mr. Chiang's — I'm sure he'll fax

4  them to you or email them to you, get them back to him

5  immediately so we can get this thing resolved.

6      All right.  Is there anything else that we need to

7  discuss?

8      MR. WESOLOWSKI:  Your Honor, we got the motion to

9  convert or dismiss.  Maybe that should just be continued to some

10  future date.

11      THE COURT:  Yeah, I think that makes the most sense.

12  Why don't we continue that.

13      Do we have a March — is it March 7th, Tanya?

14      THE CLERK:  Yes.

15      THE COURT:  Let's continue that to March — although,

16  actually, we should put that on a law and motion calendar at

17  that point because we won't need a status conference.

18      THE CLERK:  Okay.

19      THE COURT:  Although we do need to figure out where

20  this case is going.

21    (The Court and Clerk confer.)

22      MR. WESOLOWSKI:  Your Honor, there's also a status

23  conference today as well.

24      THE COURT:  So we'll continue the status conference

25  and the motion the convert or dismiss to March 7 at — is it at —

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 25 of
34

1948 Diamond Oak Way — Manteca California — 95336-9124 — (800) 665-6251

1    THE CLERK:  10:00 or 1:00 — 2:00.

2    THE COURT:  10:00, I think.  10:00 a.m.

3    MR. WESOLOWSKI:  And that would be the disclosure

4  statement hearing as well, which is sort of mute at this point,

5  it looks like.

6    THE COURT:  Right, right.  It would be continued as

7  well, I suppose.

8    So, Mr. Calhoun, just to be clear, we're not expecting

9  you to go forward with a disclosure statement given the

10  settlement that you've announced, so — and if something goes

11  wrong and you are pressing that, you'll need to give the

12  Courtroom Deputy a call.

13    MR. CALHOUN:  Okay.

14    THE COURT:  A calendar we don't use for disclosure

15  statements.

16    MR. RUBENSTEIN:  One clarification.  On the — on the

17  order granting relief from the automatic stay, I mean we're

18  supposed to put in the order the Bankruptcy Code section that

19  it's based on and our motion was based on 362(d)(1) and 362- —

20    THE COURT:  (3).

21    MR. RUBENSTEIN:  — 362(d)(1) and 362(d)(3).  That —

22  so —

23    THE COURT:  I actually think it's a stipulated order,

24  so I think you just — it's a stipulated order, so I think what

25  it is is what the parties have agreed to, not what I would have

1   concluded.  I would have told you what I was going to conclude,

2   but you didn't want to hear that.

3          MR. RUBENSTEIN:  Okay.  Well, —

4          THE COURT:  And I don't think you want to hear it

5   now..

6       (Laughter.)

7          THE COURT:  So I think you better just say the parties

8   have stipulated to this relief.  It's a very good resolution, I

9   think.

10          MR. RUBENSTEIN:  Okay.

11          THE COURT:  I will say that.  And so I think you just

12   say the motion is granted —

13          MR. RUBENSTEIN:  Pursuant to.  Perfect.

14          MR. CHIANG:  Have to say the motion is granted, Your

15   Honor, under 362 —

16          THE COURT:  Yeah.

17          MR. CHIANG:  — (3).

18          THE COURT:  362(d).

19          MR. RUBENSTEIN:  Good enough, okay.

20          THE COURT:  Right.  Anything else?  So we got the

21   trustee's motion —

22          MR. GUERIN:  Your Honor, Regis Guerin for Bank of

23   America.

24          THE COURT:  Yes.

25          MR. GUERIN:  There is also a motion to dismiss the

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 27 of 34

1    adversary complaint scheduled for January 14th.

2              THE COURT:  Okay.

3              MR. GUERIN:  I would suggest that we just move that

4    out to the March date.

5              THE COURT:  So the parties to that, are they presented

6    here today?  That's — that's you, Mr. Calhoun, it's your — it's

7    your adversary proceeding, right?

8              MR. CALHOUN:  Yes.

9              THE COURT:  And, Mr. Guerin, are you representing the

10   Bank of America in that matter?

11             MR. GUERIN:  Yes, Your Honor.

12             THE COURT:  All right.  And so do the parties agree to

13   move the initial hearing on the status conference?

14             MR. CALHOUN:  Yes.

15             THE COURT:  Okay.

16             MR. CALHOUN:  Shall we move it to the 17th?

17             THE COURT:  I don't think they'd come up twice a

18   month.

19             Do you know when the next date is on that, Tanya?

20             THE CLERK:  Well, that — the motion on the 14th is on

21   the adversary motion calendar.

22             THE COURT:  Right.

23             THE CLERK:  Okay.

24             THE COURT:  So let's just move it to the next

25   adversary motion calendar and see where it can go.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 28 of
34

1          THE CLERK:  To the one after the 14th?

2          THE COURT:  Yeah, —

3          THE CLERK:  February 4th.

4          THE COURT:  No, a month.  So to — whenever the next

5    one is.

6          THE CLERK:  February 19th.

7          THE COURT:  Okay.  So February 19th, Mr. Guerin.

8    February 19th for your motion to dismiss, which —

9          MR. GUERIN:  Okay.

10         THE COURT:  — you know if the parties have resolved

11   this matter — Mr. Calhoun, have you answered that complaint, —

12   Mr. Guerin, no you filed a motion to dismiss.

13         MR. CALHOUN:  Correct.

14         MR. GUERIN:  Correct.

15         THE COURT:  All right.  You can stipulate to dismiss,

16   if that makes sense.  Otherwise you can appear and we'll deal

17   with it at the time.

18         MR. CALHOUN:  And there is —

19         MR. GUERIN:  Right.

20         MR. CALHOUN:  — one other little thing that was — it's

21   somewhat important, I guess, is a BofA was going to represent

22   that they are in agreement with the settlement as recited today.

23         THE COURT:  Is that true, Mr. Guerin?

24         MR. GUERIN:  Is that — that is correct, Your Honor.

25         THE COURT:  Okay.  Well, through have it, Mr. Calhoun.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 29 of 34

1    MR. RUBENSTEIN:  Your Honor, just out of an abundance

2    of caution, if anything can go wrong, it will, I can envision —

3    I can envision the superior court order, you know if we go in

4    and we ask the money to be released, it will say, 'Oh, gee whiz,

5    this case is in bankruptcy,' so can we have a provision, and I

6    think obviously it would be subject to everybody's buyoff, in

7    the relief from stay order, basically, saying that relief from

8    stay includes the right to have the superior court order —

9    superior court release funds held by the receiver.

10    MR. CALHOUN:  To your client?

11    MR. RUBENSTEIN:  Yes.

12    MR. CALHOUN:  I have no problem.  I would — I would

13   rather get that money into Bank of Marin's hands as opposed to

14   being $20 short come the 31st of January.

15    THE COURT:  Okay.  That in effect is just a payment on

16   the secured debt, which wouldn't require a plan anyway.  So I

17   don't have a problem including that in the order at all.

18    MR. RUBENSTEIN:  Okay.  Thanks.

19    One other comment, and this is — I apologize, it's

20   kind of difficult to — it's more of a question of Mr. Guerin.

21   And I'm sorry pressing this in court, is I expect — because Bank

22   of America is a party to the superior court action, I envision

23   that what we're going to do is we're going to make an

24   application to the superior court and be accompanied, ideally,

25   by a stipulation to all parties to that case saying that they

Case: 12-56050    Doc# 107    Filed: 03/18/13    Entered: 03/18/13 07:59:58    Page 30 of
34

1    agree or they have no objection to what the request is, in an

2    effort to try to avoid having the superior court put it on a

3    28-day calendar, or something like that.  Would Bank of America,

4    obviously subject to the — looking at the stipulation, make sure

5    it's acceptable, is that something that Bank of America would be

6    willing to do?

7              MR. GUERIN:  Yeah.  I don't think we have any — any

8    dogs in that fight, so to speak.  I don't think we have any

9    problems with it, so.

10             MR. RUBENSTEIN:  Thank you.

11             THE COURT:  Okay.

12             MR. GUERIN:  You can send me the stipulation and we'll

13   take a look and most likely sign off on it.

14             MR. RUBENSTEIN:  Thank you.

15             THE COURT:  Okay.  I think that's it.  I think it's a

16   very good resolution for the parties.  I'm sure it was a lot of

17   work getting here.  And so I'll see whoever's here on the 17th

18   for the hearing on the motion to approve the resolution with

19   Bank of America.  And, otherwise, I'll receive two orders from

20   Mr. Chiang, which will be the relief-from-stay order and the

21   receiver order.

22             Is that it?

23             MR. RUBENSTEIN:  Yes.  Thank you very much, Your

24   Honor.

25             THE COURT:  Okay.  And continued hearings on the

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 31 of
34

1   adversary proceeding and Mr. Wesolowski's motion.

2          MR. COSTELLO:  Your Honor, I just didn't have in my

3   notes.  The adversary proceeding hearing was scheduled to — to

4   February 19th —

5          THE COURT:  It was on the 14th originally and it's

6   moved to February — February 19th?

7          THE CLERK:  Yes.

8          THE COURT:  February 19th at —

9          MR. COSTELLO:  What — what time?

10          THE CLERK:  At 1:30.

11          MR. COSTELLO:  At 1:30.  Thank you.

12          THE CLERK:  And the CMC?

13          THE COURT:  The CMC goes with — I think — did we say

14   March 7th?  The CMC and the disclosure statement and Mr.

15   Wesolowski's motion are all going to the next status conference

16   date.

17          MR. WESOLOWSKI:  We did say that, yes.

18          THE CLERK:  The CMC and the adversary or are you

19   talking about the status conference?

20          THE COURT:  When is the CMC —

21          THE CLERK:  The CMC is for the end of this month, the

22   31st.

23          THE COURT:  Do you want to just move that to the 19th

24   as well?

25          THE CLERK:  Yes.

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 32 of
34

1        THE COURT:  Okay.  Mr. Guerin, just to be clear,

2   there's a CMC in the adversary proceeding at the end of this

3   month which we're also going to move to the 19th of February.

4   So you're going to have your motion to dismiss and the case

5   management conference on the same day.

6        MR. GUERIN:  Fantastic.

7        THE COURT:  And so —

8        MR. GUERIN:  I do anticipate that it will be dismissed

9   by then, anyway, but —

10       THE COURT:  We'll — we'll —

11       MR. GUERIN:  Thank you.

12       THE COURT:  — eliminate the need to file a case

13   management conference statement too.

14       MR. CALHOUN:  Yes.  And in the event we can get this

15   done in writing and stipulated, then we can relieve the Court of

16   that date too.  So I'll get that to as soon as we can.

17       THE COURT:  Okay.

18       MR. GUERIN:  Thank you, Your Honor.

19       THE COURT:  Thank you very much.

20       MR. RUBENSTEIN:  Thank you.

21       THE COURT:  All right.  Good luck.

22       MR. CALHOUN:  Thank you, Your Honor.

23       THE CLERK:  That concludes the calendar.  Please rise.

24       (The hearing was concluded at 3:41 o'clock p.m.)

25                          —o0o—

Case: 12-56050   Doc# 107   Filed: 03/18/13   Entered: 03/18/13 07:59:58   Page 33 of
34

State of California            )
                              )    SS.
County of San Joaquin         )




        I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

        I further certify I am not a party to nor in any way interested in the outcome of this matter.

        I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.



                                Susan Palmer
                                Palmer Reporting Services

                                Dated March 5, 2013